**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN MICHAEL KIRBY,

Defendant-Appellant.

No. 10-1235
(D.C. No. 1:10-CR-00004-JLK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

John Michael Kirby pleaded guilty to two counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and was sentenced to sixty months' imprisonment for each count, to be served consecutively. Because he was on supervised release when the incidents occurred, he also received a twenty-seven-month sentence for violating the terms of his release, to be served

---

[*] This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

consecutive to both sixty-month sentences. In total, Mr. Kirby received a 147-month prison sentence. On appeal, Mr. Kirby challenges the procedural reasonableness of his sentence, arguing that the district court failed to calculate or consider the applicable Guidelines range. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Mr. Kirby's sentence.

## BACKGROUND

On December 14, 2009, Mr. Kirby entered a Bank of the West branch in Westminster, Colorado, and demanded that the teller "[g]ive [him] all [the] 100s, 50s, and 20s." R., Vol. I, at 16 (Plea Agreement, filed Mar. 4, 2010). When the teller questioned the genuineness of Mr. Kirby's demand, he allegedly stated: "I have a gun." *Id.* "Fearing for her safety," the teller handed over $835, and Mr. Kirby left the bank. *Id.*

On December 16, 2009, Mr. Kirby robbed another Bank of the West branch in Arvada, Colorado. The next day, December 17, 2009, the police received a tip that Mr. Kirby was the perpetrator of the December 16 robbery in Arvada.

On December 28, 2009, Mr. Kirby again entered the Bank of the West branch in Arvada and demanded "100s, 50s and 20s" from the teller. *Id.* at 17. The teller handed over $1470 in cash, and Mr. Kirby left the bank.

The ensuing police investigation eventually resulted in Mr. Kirby's arrest. After he was arrested, Mr. Kirby admitted to all three bank robberies. At the time that each of the robberies occurred, Mr. Kirby was on supervised release

2

stemming from a previous drug-trafficking conviction.

Mr. Kirby was charged with three counts of bank robbery, in violation of 18 U.S.C. § 2113(a). On March 4, 2010, Mr. Kirby pleaded guilty to two of the robbery counts (arising from the December 14 and December 28 robberies). In exchange, the government moved to dismiss the remaining count (arising from the December 16 robbery). The sentencing computation included in the plea agreement indicated that Mr. Kirby had a base offense level of twenty under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.1(a). The base offense level was increased by two levels pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken; increased by another two levels pursuant to U.S.S.G. § 2B3.1(b)(2)(F), because a threat of death was used (based on Mr. Kirby's statement during the December 14 robbery that he had a gun); and increased by another two levels pursuant to U.S.S.G. §§ 3D1.2 and 3D1.4, because a multiple-count computation was performed.

Mr. Kirby was also credited a three-level downward adjustment for acceptance of responsibility, which resulted in an overall adjusted offense level of twenty-three. Mr. Kirby's total offense level of twenty-three, combined with a criminal history category of III, resulted in an estimated Guidelines range of fifty-seven to seventy-one months. Mr. Kirby did not object to the calculation included in the plea agreement.

Prior to sentencing, a Presentence Investigation Report ("PSR") was

3

prepared by the probation officer. The PSR arrived at the same calculation as the plea agreement—*viz.*, a total offense level of twenty-three and a criminal history category of III, which resulted in a Guidelines range of fifty-seven to seventy-one months. The PSR advocated for a "sentence at the bottom of the advisory guideline range (57 months)," stating that a low-end sentence "w[ould] be sufficient, but not greater than necessary to accomplish the goals of sentencing." R., Vol. III, at 32 (PSR, filed May 11, 2010). Mr. Kirby filed one objection to the PSR—specifically, he objected to the two-level "threat of death" enhancement under U.S.S.G. § 2B3.1(b)(2)(F). After considering Mr. Kirby's objection, the probation officer declined to make any determination regarding that two-level enhancement, stating that he "believe[d] that this [wa]s a factual issue to be determined by the Court at sentencing." *Id*. at 49 (Second Addendum to PSR, filed May 18, 2010).

At the sentencing hearing, the district court addressed the two robbery convictions, as well as the violation of Mr. Kirby's supervised release. In addressing the robbery convictions, the district court judge began by stating: "I am not going to follow the [G]uidelines in this case because I find them to be completely inadequate," and therefore "we're going to proceed to [the 18 U.S.C. § 3553 factors] and not follow the [G]uidelines." R., Vol. II, at 17–18 (Sentencing Hr'g Tr., dated May 19, 2010). In explaining his reasoning for declining to follow the Guidelines, the judge stated:

4

There is inadequate consideration given to five previous felonies, to a criminal record starting at age 13 and continuing, to the violent nature of the crimes for which sentencing will take place today, as well as violence in the past, and the fact that there's extensive drug dealing.

The other factor is that the defendant robbed three banks—well, two banks twice, which is highly indifferent and against the laws of others, and I find there is a significant degree of danger and probability of further violent crimes, based upon a consideration of the record, and that recidivism has been clearly established, and there's no reason to think that recidivism is not with us today and going to be in the future for a considerable period of time.

*Id.* When asked if she had anything to say, Mr. Kirby's sentencing counsel stated: "Before we get to the [§] 3553(a) factors, we have an objection to the [PSR calculation]." *Id.* at 18. The judge responded that he was aware of the objection to the "threat of death" enhancement, but expressed that "[t]here's no reason to proceed on that [objection] because I'm not following the [G]uidelines anyway. I'm not taking [the enhancement] into consideration." *Id.* at 18–19. Defense counsel then stated: "I understand that you're not taking that into consideration, but if the [G]uidelines aren't calculated correctly—I guess I'm confused, but I'll just let it go." *Id.* at 19. The district court judge then gave further explanation:

What I'm saying is that . . . in order to correct or to hear that objection, it would be necessary to have evidence from the teller and from your client to decide—or other witnesses—and decide whether or not the statement was made. If that were the case—and it might affect the [G]uidelines—the [G]uidelines' recommended sentence would be different, but I'm not following

5

the [G]uidelines anyway. Therefore, it's completely irrelevant. Pursuant to [§] 3553, I am not taking that into consideration because it's not established. So it's not a factor in my sentencing under the [§] 3553 criteria.

*Id.* Counsel then stated: "I understand, Your Honor. Thank you." *Id.*

At the close of the hearing, the judge imposed what he acknowledged was a "severe sentence . . . based upon [Mr. Kirby's] past record . . . and performance"—sixty months' imprisonment for each robbery count and twenty-seven months' imprisonment for the supervised-release violation, all to be served consecutively, for a total of 147 months' imprisonment. *Id.* at 22–24. When asked if she had "any objections to the sentences given," Mr. Kirby's counsel "ask[ed] the Court to reconsider running the 27 months consecutive," but voiced no objection to the district court's failure to rule on the sentencing enhancement or otherwise calculate the applicable Guidelines range. *Id.* at 26. The court refused to grant her request.

## DISCUSSION

Mr. Kirby contends that his sentence is procedurally unreasonable due to the sentencing court's failure to properly calculate and consider the applicable Guidelines range prior to issuing his sentence. The parties dispute whether Mr. Kirby's counsel lodged a contemporaneous objection at the sentencing hearing to the district court's alleged failure to calculate and consider the applicable Guidelines range.

6

On the one hand, Mr. Kirby asserts that counsel *did not* object to the district court's alleged failure to calculate and consider the applicable Guidelines range. He contends that "at most" counsel was "objecti[ng] to the district judge's failure to rule on [his] pending objection [to the "threat of death" enhancement]," rather than "the judge's [failure to perform his] independent duty to calculate and consider the Guidelines." Aplt. Opening Br. at 15–16; *see also id.* at 12 ("A contemporaneous objection did not occur here."). Mr. Kirby acknowledges that "[w]hen a party fails to object contemporaneously to the district court's sentencing procedure, we review procedural reasonableness challenges for plain error." *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir.), *cert. denied*, 130 S. Ct. 395 (2009); *see* Aplt. Opening Br. at 12. However, he argues that we should nevertheless review his claim for "reasonableness, not plain error . . . because any objection here would have been futile, and futility excuses the lack of a contemporaneous objection." Aplt. Opening Br. at 12.

On the other hand, the government asserts that Mr. Kirby's counsel *did* object to the district court's alleged failure to calculate and consider the Guidelines, and that she abandoned that objection at the sentencing hearing through her statement: "I understand that you're not taking [the enhancement] into consideration, *but if the* [*G*]*uidelines aren't calculated correctly*—I guess I'm confused, *but I'll just let it go*." R., Vol. II, at 19 (emphasis added). Accordingly, the government argues that Mr. Kirby is not entitled to appellate

7

review of this issue because it has been waived.  *See, e.g.*, *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006) ("[A] party that has waived a right is not entitled to appellate relief." (emphasis omitted)).

We need not, however, become immersed in this procedural morass.  Even adopting Mr. Kirby's view—*viz.*, that no objection was lodged regarding the procedural issue raised on appeal—his claim fails.  As an initial matter, we conclude that Mr. Kirby cannot avail himself of the "futility exception."  The "futility exception" to the contemporaneous-objection requirement "applies when 'the district court is aware of the party's position and it is plain that further objection would be futile, where [the] litigant's position [was] clearly made to the district court.'"  *United States v. Algarate-Valencia*, 550 F.3d 1238, 1243 (10th Cir. 2008) (alterations in original) (quoting *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1172 (10th Cir. 2003)).

Despite Mr. Kirby's assertions to the contrary, his "position" was not "clearly made to the district court."  *Id.*  Indeed, Mr. Kirby concedes that counsel *at most* raised an objection to the court's failure to rule on the "threat of death" enhancement included in the PSR calculation, which is a separate issue "not pursued on appeal."  Aplt. Opening Br. at 17.  If, as Mr. Kirby characterizes it, there was no objection to the more general alleged sentencing error regarding the failure to calculate and consider the applicable Guidelines range, then it cannot logically be said that, on this issue, Mr. Kirby's "position [was] *clearly made* to

8

the district court." *Algarate-Valencia*, 550 F.3d at 1243 (alteration in original) (emphasis added) (quoting *Abuan*, 353 F.3d at 1172) (internal quotation marks omitted). Despite multiple opportunities to do so,[1] Mr. Kirby's counsel failed to "make clear" the position asserted on appeal.

Furthermore, regarding the futility component of the exception, the sentencing court's comments do not offer any suggestion that the court would have been unwilling to consider any timely objection by Mr. Kirby regarding its alleged failure to compute and consider the applicable Guidelines range. Although the court thoroughly explained why it was not ruling on the specific "threat of death" exception, it was not refusing—in response to an objection from counsel—to fulfill its mandatory duty to calculate and consider the applicable Guidelines range. If Mr. Kirby's counsel had lodged an objection to the court's alleged failure to honor this duty, we cannot say that the district court would not have responded in a manner consistent with that duty and satisfactory to Mr. Kirby.

For example, this is not a case in which the sentencing court flatly refused to give counsel the opportunity to object, or clearly indicated that the matter was

---

[1] In particular, Mr. Kirby's counsel could have objected to the district court's alleged failure to calculate and consider the applicable Guidelines range after it initially offered its explanation for declining "to follow the [G]uidelines in this case," R., Vol. II, at 17, after it further explicated its rationale for not ruling on the "threat of death" enhancement, *id.* at 19, and after it pronounced its sentence and inquired if there were "any objections to the sentences given," *id.* at 26.

not open to further discussion.  *See United States v. Middagh*, 594 F.3d 1291, 1295 (10th Cir. 2010) (finding that the exception applied where "counsel started to speak after the district court imposed [the] sentence," but "[t]he court cut counsel short, stopping him midsentence and telling him that the 'matter is done'"); *Algarate-Valencia*, 550 F.3d at 1243 (concluding that any objection to the court's failure to provide an adequate explanation of the sentence imposed would have been "futile" where opposing counsel requested "a specific finding that the judge had considered and rejected [the defendant's] arguments for a variance," and "[t]he judge refused, saying, 'I'm not going to do that.  I mean, you heard my sentence.  It seemed to me to be pretty clear.'").  Neither is this a situation where counsel had repeatedly asserted, and the court had repeatedly denied, the precise position raised on appeal.  *See Asbill v. Hous. Auth. of the Choctaw Nation of Okla.*, 726 F.2d 1499, 1502 n.3 (10th Cir. 1984) (concluding that a party's failure to raise a contemporaneous objection below did not result in waiver on appeal because the district court had previously rejected its position at least four times before and during trial).

Accordingly, the futility exception is inapplicable, and we review Mr. Kirby's claim for plain error.  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quoting *United States v.*

10

*Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004) (internal quotation marks omitted).  Mr. Kirby cannot satisfy this heightened standard.

The procedural error Mr. Kirby identifies on appeal is the district court's alleged failure to calculate and consider the applicable Guidelines range.  A sentence is procedurally unreasonable if, *inter alia*, "the district court incorrectly calculates or fails to calculate the Guidelines sentence."  *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  Indeed, "a district court should begin *all* sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall*, 552 U.S. at 49 (emphasis added).  "[T]he Guidelines should be the starting point and the initial benchmark" for all sentencing courts, regardless of the end result.  *Id.*

As this court has stated:

> [U]nder our sentencing framework, a district court must first calculate the "applicable [G]uideline[s] range."  To do so, the court must apply "each [G]uideline[s] provision relevant to the particular defendant's offense and criminal history category . . . and then determin[e] the range . . . .  Only then may the court determine the propriety and extent of a departure or variance; indeed, a court's failure first to properly calculate the "applicable [G]uideline[s] range" . . . is grounds for resentencing.

*United States v. Corber*, 596 F.3d 763, 767 (10th Cir. 2010) (sixth alteration in original) (citations omitted), *cert. denied*, 131 S. Ct. 897 (2011).

Mr. Kirby claims that the district court erred when it "dispensed with the task of calculating" the applicable Guidelines range.  Aplt. Opening Br. at 9

11

(emphasis omitted); *see also id.* at 17–18.  Mr. Kirby's position is not wholly

lacking in record support.  During the sentencing hearing, the district court did

not calculate the applicable Guidelines range, made no mention of that range, and

did not indicate in any way whether the court was adopting as correct the

identical Guidelines computations of the PSR and plea agreement, or relying on

an independent Guidelines calculation that it had performed.  Furthermore,

neither of the attorneys discussed or mentioned the applicable Guidelines range.

*See United States v. Peebles*, 624 F.3d 344, 347 (6th Cir. 2010) (concluding that

the district court had failed to calculate the defendant's applicable Guidelines

range because "the transcript of the sentencing hearing d[id] not reflect that the

district court addressed the Guidelines range at all," and "[t]he applicable

Guidelines range was not discussed during the hearing by either attorney or by the

judge").

However, we have not required the district court, in calculating the

applicable Guidelines range, to expressly perform a step-by-step calculation on

the record at the sentencing hearing.  *Cf. United States v. Lopez-Flores*, 444 F.3d

1218, 1222 (10th Cir. 2006) (stating that "[w]e do not require a ritualistic

incantation to establish consideration of a legal issue, nor do we demand that the

district court recite any magic words to show us that it fulfilled its responsibility

to be mindful of the [§ 3553(a)] factors that Congress has instructed it to

consider."  (quoting *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir.

12

2004)) (internal quotation marks omitted)).  Therefore, a district court's failure to perform a step-by-step Guidelines calculation on the record does not necessarily render the resulting sentence procedurally unreasonable.[2]  Ultimately, however, we need not definitively opine on whether the district court erred here in failing to compute and consider the applicable Guidelines range.  Even if we assume, *arguendo*, that the district court did err, and that Mr. Kirby can satisfy his burden with respect to the first three prongs of the plain-error test—i.e., that (1) the district court committed error, (2) that is plain, and which (3) affects his substantial rights—Mr. Kirby clearly cannot satisfy the fourth prong.  Therefore, he cannot prevail on appeal.

In the sentencing context, in order to satisfy the fourth prong of the plain-error test, Mr. Kirby has the burden of "demonstrat[ing] a *strong possibility* of

---

[2]     For example, in a nonprecedential decision, a panel of our court concluded that the appellant's sentence was procedurally reasonable despite the fact that the district court neither specifically calculated the Guidelines range at the sentencing hearing, nor indicated what the applicable range was, but instead relied on the calculations in the PSR. *See United States v. Zaler*, No. 09-1521, 2010 WL 5097758, at *7–9, *12 (10th Cir. Dec. 15, 2010).  More specifically, the district court did not recite the applicable Guidelines range at the hearing or explicitly rule on the defendant's objection to the PSR's calculation.  However, the district court did state that it "ha[d] considered" the Guidelines, had fully considered the PSR and other materials submitted regarding the Guidelines, was "thoroughly familiar with the [PSR] and the analysis of those [G]uidelines contained in that report," and, most importantly, indicated that "[t]he [G]uideline[s] calculations contained in the [PSR] [were] correct." *Id.* at *7.  After indicating in this manner that it had considered the applicable Guidelines range and its underlying calculations, the court concluded that "the application of the [G]uidelines produces sentences less than necessary to achieve the purposes of [§ 3553(a)]." *Id.*

13

receiving a *significantly lower* sentence." *United States v. Andrews*, 447 F.3d 806, 813 (10th Cir. 2006) (emphasis added); *accord United States v. Franklin-El*, 554 F.3d 903, 913 (10th Cir.) ("Defendant certainly has not established the court would *likely* impose a *significantly* lesser sentence on remand. Therefore, Defendant has failed to satisfy the fourth prong of plain error review."), *cert. denied*, 129 S. Ct. 2813 (2009); *United States v. Brown*, 316 F.3d 1151, 1161 (10th Cir. 2003) (noting that under the fourth prong of plain error, "the key concern [is] whether correct application of the sentencing laws would likely significantly reduce the length of the sentence"); *see also United States v. Sierra-Castillo*, 405 F.3d 932, 941 (10th Cir. 2005) ("The court emphasized that the defendant has the burden of demonstrating that the fourth prong of the plain-error test has been satisfied, and that 'sentencing error meets the fourth prong of plain-error review only in those rare cases in which core notions of justice are offended.'" (quoting *Gonzalez-Huerta*, 403 F.3d at 739)). Mr. Kirby has not carried this fourth-prong burden.

More specifically, even if the district court had clearly calculated and considered the Guidelines range during the sentencing hearing, Mr. Kirby has failed to demonstrate that there is "a strong possibility" that he would have "receiv[ed] a significantly lower sentence." *Andrews*, 447 F.3d at 813. The district court had before it both the PSR and the plea agreement, which included an identical recommended Guidelines range of fifty-seven to seventy-one months.

14

This was the highest possible Guidelines range under consideration, which included the "threat of death" enhancement. The district court could have expressly adopted on the record the computations underlying that range as correct and considered the recommended range in imposing a sentence on Mr. Kirby, thus negating the asserted error. However, that action would not have altered the fact that the court explicitly found the recommended range—whether correctly calculated or not—to be "completely inadequate" (that is, too low) due to several "aggravating circumstances." R., Vol. II, at 17, 23.

Furthermore, if the district court had calculated the Guidelines range in Mr. Kirby's favor—by concluding that the two-level "threat of death" enhancement was not applicable and should be excluded from the recommended range—upon consideration, it perforce would have found the resulting *lower* Guidelines range to be even *more* inadequate. In other words, it defies logic to think that the district court on this record would have viewed the resulting lower Guidelines range as being more reflective of the statutory purposes of sentencing embodied in § 3553(a)[3] than the higher, recommended Guidelines range that it already had expressly found to be inadequate—that is, not high enough to satisfy those purposes. Thus, there is no strong possibility that such a lower range would have

_____

[3] *See United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008) (discussing the "parsimony principle of § 3553(a)," which provides that the court shall impose a sentence that is "sufficient but not greater than necessary to effectuate the purposes of sentencing").

led the court to impose a significantly lower sentence on Mr. Kirby.

All of this is underscored by the fact that the district court expressly acknowledged that it was imposing a "severe sentence" on Mr. Kirby, well outside any potential Guidelines range, and articulated its reasons for imposing such a harsh sentence. R., Vol. II, at 22. The record does not even hint that the district court had an inclination to impose a more lenient sentence on Mr. Kirby. Therefore, even if the district court had calculated and considered the applicable Guidelines range, it is patent that Mr. Kirby would not have received a significantly lower sentence than the one that he received. Accordingly, he has failed to satisfy the fourth prong of plain-error review.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Mr. Kirby's sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

16